**UNITED STATES ex rel. Harold KO-NIGSBERG, Petitioner-Appellant,**

v.

**Leon J. VINCENT, Superintendent of Green Haven Correctional Facility, Respondent-Appellee.**

**No. 63, Docket 75–2028.**

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1975.

Decided Nov. 3, 1975.

Jay Goldberg, New York City, for petitioner-appellant.

Edward Agnew McDonald, Asst. Dist. Atty. (Robert M. Morgenthau, Dist. Atty., New York County, Peter L. Zimroth, Robert M. Pitler, Paula Van Meter, Asst. Dist. Attys., on the brief), for respondent-appellee.

Before FRIENDLY, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Harold Konigsberg, no stranger to the federal courts,[1] appeals from the denial of his application for a writ of habeas corpus by the United States District Court for the Southern District of New York. The petition contained a variety of claims, all attacking the validity of Konigsberg's 1967 conviction in a New York State court of extortion and of conspiracy to extort,[2] for which Konigsberg received a long prison sentence.[3] The habeas petition was referred by Judge Harold R. Tyler, Jr., to United States Magistrate Sol Schreiber under 28 U.S.C. § 636(b)(3). The magistrate thereafter submitted a thorough report and recommended that all of Konigsberg's claims be denied without an evidentiary hearing. Judge Tyler adopted, with one exception, the magistrate's findings and conclusions. The exception concerned Konigsberg's claim of constitutional error arising out of his pro se representation in the state trial. As to this, Judge Tyler held an evidentiary hearing, after which he concluded that Konigsberg had been competent to decide to represent himself and that no constitutional error was committed in allowing him to do so. 388 F.Supp. 221 (S.D.N.Y.1975).

I

Although appellant makes a number of arguments to us, only the self-representation issue that troubled Judge Tyler requires extended discussion. Konigsberg's trial had a number of unusual aspects: Although Konigsberg was indicted in December 1963, his trial did not commence until four years later; one of the key witnesses against him, a victim of the extortion, was found murdered shortly before trial; an enormous amount of attention had been paid before trial to the question of Konigsberg's competence to stand trial; and the trial minutes show that Konigsberg engaged in provocative antics aimed at the judge and prosecutor, obviously attempting either to obtain a mistrial or to gain some sort of sympathy from the jury.

Konigsberg's trial had originally been scheduled to start in December 1964, but at that time Konigsberg claimed he was incapable of conferring with counsel or preparing a defense due to paralysis and aphasia, the inability to speak coherently. During court appearances, Konigsberg sat in a wheel chair as though he

---

1. See, e. g., *Konigsberg v. Shute*, 435 F.2d 551 (3d Cir. 1970); *Konigsberg v. United States*, 418 F.2d 1270 (3d Cir. 1969), *cert. denied*, 398 U.S. 904, 90 S.Ct. 1693, 26 L.Ed.2d 63 (1970); *Konigsberg v. Ciccone*, 417 F.2d 161 (8th Cir. 1969), *cert. denied*, 397 U.S. 963, 90 S.Ct. 996, 25 L.Ed.2d 255 (1970); *United States ex rel. Konigsberg v. McFarland*, 348 F.2d 215 (3d Cir. 1965); *Konigsberg v. United States*, 336 F.2d 844 (3d Cir.), *cert. denied*, 379 U.S. 933, 85 S.Ct. 334, 13 L.Ed.2d 344 (1964); *Konigsberg v. Time, Inc.*, 312 F.Supp. 848 (S.D.N.Y. 1970); *Konigsberg v. Hunter*, 308 F.Supp. 1361 (W.D.Mo.1970); *New York v. Konigsberg*, 305 F.Supp. 1201 (S.D.N.Y.1969).

2. The conviction was unanimously affirmed, 34 A.D.2d 616, 309 N.Y.S.2d 993 (1st Dep't 1970), and Konigsberg's appeal to the New York Court of Appeals was dismissed because he failed to file a brief and appendix. Certiorari was denied in 404 U.S. 836, 92 S.Ct. 123, 30 L.Ed.2d 68 (1971).

3. Konigsberg was sentenced to 10–14 years on the conspiracy count and 20–30 years on each extortion count, to run concurrently with each other but consecutive to the conspiracy count. These state sentences were to commence at the expiration of a ten-year federal sentence Konigsberg was then serving for possession of goods stolen from an interstate shipment.

were dead. At the competency hearing, there was testimony from several psychiatrists, from Konigsberg himself, given in mumbled and incoherent fashion, and from several employees at institutions where Konigsberg had been confined. The latter indicated that in the periods between court appearances Konigsberg made a miraculous recovery from the vegetable-like appearance that characterized him in court. In a memorandum opinion in April 1965, Justice Abraham Gellinoff referred to his impression during the hearing that Konigsberg was "malingering" and found that he was capable of understanding the proceedings against him and of making his defense. In October 1966, after Konigsberg had received further psychiatric examination in federal custody,[4] he again asked for a hearing on his competency to stand trial. Once more, several medical experts who had examined or observed Konigsberg testified. As before, those called by the state indicated that Konigsberg was feigning insanity and those called by Konigsberg offered contrary evidence. Justice Gellinoff again found Konigsberg competent to stand trial,[5] which finally began in December 1966.

The principal issue on appeal arises out of Konigsberg's decision to discharge his lawyer after 12 trial days and to represent himself thereafter. By that time Konigsberg had heard damaging testimony from a co-defendant who had decided to turn state's evidence. The judge accepted Konigsberg's decision that he would thereafter represent himself, and directed Frances Kahn, Konigsberg's attorney, to continue to sit at the counsel table and be of assistance to Konigsberg. The federal habeas petition claimed that Konigsberg did not have "the capacity to stand trial without benefit of counsel,"[6] and that the state judge failed to make the necessary in-

quiry as to whether Konigsberg knew the implications of representing himself. As already indicated, Judge Tyler held a hearing at which Justice Gellinoff testified, as did Frank Lopez, an attorney brought into the state trial by Ms. Kahn, and several psychiatrists who had examined appellant. Judge Tyler found that Justice Gellinoff had focused on the question whether Konigsberg was competent to waive counsel, that there was sufficient evidence to support the state judge's determination that Konigsberg was competent to represent himself, and that the state judge's failure to inform Konigsberg explicitly of his rights or of the consequences of waiving counsel did not, under all the circumstances, vitiate the waiver.

The first two of these determinations by Judge Tyler are essentially factual and they are certainly not clearly erroneous. Appellant makes much of the distinction between competence to stand trial and competence to waive counsel, citing, among other authorities, *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1965). That case does indicate that the standard of competence for making the decision to represent oneself is vaguely higher than the standard for competence to stand trial.[7] But in applying the former standard, Judge Tyler clearly recognized the distinction and committed no error of law.

There remains the more difficult question whether, as Judge Tyler put it, petitioner's "waiver" was "valid". We emphasize the district court's phrasing because we would not necessarily have framed the issue that way in the first instance. It seems to us that a case where a defendant is vehemently asserting his right of self-representation is not truly a case of waiver of a constitutional right; it is a decision to assert one con-

---

4. See note 3 supra.

5. Both this determination and the April 1965 finding were made under the then-applicable N.Y. Code of Criminal Procedure § 658.

6. Petitioner-Appellant's Habeas Petition, at 15.

7. Cf. *Sieling v. Eyman*, 478 F.2d 211, 214–15 (9th Cir. 1973); see *United States v. Dougherty*, 154 U.S.App.D.C. 76, 473 F.2d 1113, 1123 n. 13 (1972).

stitutional right instead of another. At least this is true in a situation like Konigsberg's, where he was under no pressure to forego the assistance of counsel. However, we will use the conventional waiver terminology because both parties have argued that way to us.

■ Appellant contends that Konigsberg's waiver could not be accepted because the state judge failed to explore the consequences with him on the record. Four years after Konigsberg's trial, in *United States v. Harrison*, 451 F.2d 1013, 1014 (2d Cir. 1971), we did say in the context of a direct criminal appeal that "specific instructions to the accused informing him of his rights" were necessary. However, as Judge Tyler recognized, *Harrison* has been significantly qualified, even as to direct federal appeals, by *United States v. Rosenthal*, 470 F.2d 837, 845 (2d Cir. 1972), in which we held that the specific "factual background" may in some instances excuse the judge's failure to give "explicit warning and advice" regarding the waiver of counsel.[8] Konigsberg had been continuously represented prior to and during trial. He made his decision to represent himself with full knowledge of his right to counsel and of the importance of having counsel. Whatever might be the need in other situations, Konigsberg's involvement with the courts was such that there was no need for Justice Gellinoff to explain all this to him. Moreover, as Judge Tyler pointed out, the state judge was "painfully familiar with [Konigsberg's] lack of cooperation and responsiveness and may have considered it futile to make *Harrison* inquiries." Had Justice Gellinoff refused to allow Konigsberg to represent himself, there would doubtless have been a claim of error, persuasively fortified by the Supreme Court's recent decision in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), raising to a constitutional level the right to appear pro se. A criminal trial is not an obstacle course for the judge. While it would have been better if Justice Gellinoff had given Konigsberg "explicit warning and advice" when Konigsberg decided to represent himself, under all the circumstances the judge's failure to do so did not amount to constitutional error.

■ Appellant claims that he cannot be bound by his decision to represent himself because Justice Gellinoff told him "erroneously that he was brilliant, as able as any lawyer," thus making it impossible for either Ms. Kahn or Mr. Lopez to counsel him.[9] It would have been better if the judge had not made reference to Konigsberg's brilliance, but these remarks were made after Konigsberg had decided to represent himself, and were for the most part coupled with observations regarding Konigsberg's lack of training as a lawyer. Konigsberg did confer repeatedly with his lawyers throughout the trial, so much so that appellee took the position before Judge Tyler that Konigsberg did not, in fact, waive his right to counsel. While Judge Tyler held that there was a waiver and his finding is supported by the evidence, it appears that Konigsberg's decision was in part a strategic ploy. He continued to use counsel the judge had made available to him and at the same time engaged in disruptive, self-serving conduct which would not have been tolerated from an attorney.

## II

■ Konigsberg's remaining contentions require less discussion. While the trial received attention in the newspapers, understandably so in view of Konigsberg's antics in court, the publicity did not deprive him of a fair trial. Ap-

---

8. Appellant also cites *United States v. Dujanovic*, 486 F.2d 182 (9th Cir. 1973). To the extent that this case stands for a more stringent rule than *Rosenthal*, we are governed by the latter.

9. Appellant's Brief, at 44.

pellant also claims that the prosecution withheld the fact that one of Konigsberg's co-defendants, Albert Hayutin, was promised a suspended sentence in return for his testimony against Konigsberg. The record makes clear that there was no such promise and that whatever assurances Hayutin did receive were disclosed at trial. Appellant makes additional claims that he was denied a fair trial because the state trial judge was prejudiced and coerced the jury into a guilty verdict, because a "prejudiced juror" was allowed to sit, because appellant did not make a knowing and intelligent waiver of his right to a jury of 12, and because his right of direct appeal to the New York Court of Appeals was improperly frustrated by the state. None of these contentions is persuasive and they are dealt with adequately in the magistrate's report, which was accepted by Judge Tyler. We have considered all of appellant's arguments and they are without merit.

Judgment affirmed.