**Shao T. HSU, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 11342.

District of Columbia Court of Appeals.

Argued Dec. 8, 1977.

Decided Sept. 29, 1978.

974

Barry S. Simon, Washington, D. C., with whom David Povich, Washington, D. C., was on the brief, for appellant.

Jonathan Lash, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Stanley M. Weinberg, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and FERREN, Associate Judges.

**FERREN, Associate Judge:**

On June 17, 1976, the grand jury indicted appellant, Shao T. Hsu, for one count of perjury, D.C.Code 1973, § 22–2501.[1] After a two-day trial on September 9 and 10, 1976—at which Dr. Hsu represented himself—the jury returned a verdict of guilty. On September 22, 1976, following the denial of his motion for a new trial, the court sentenced Dr. Hsu to prison for a term of twenty months to eight years. Dr. Hsu now appeals, maintaining that (1) the indictment was deficient, (2) the trial court admitted much irrelevant and prejudicial evidence, (3) the evidence did not satisfy the "two-witness" requirement for perjury convictions, and (4) he did not validly waive his Sixth Amendment right to assistance of counsel. Because we cannot discern from the record a legally sufficient—a "knowing and intelligent"—waiver of appellant's right to counsel, we reverse the conviction and remand for a new trial.

## I. *Facts and Proceedings to Date*

On December 12, 1976, David Marshall, Esq., a supervising attorney at Southeast Legal Clinic, filed a civil landlord-tenant action against Dr. Hsu on behalf of Patsy Thomas, a tenant in a building he owned. The complaint sought to compel Dr. Hsu to remedy a number of substandard conditions in the Thomas apartment. Soon thereafter, on December 14, Mr. Marshall personally served on Dr. Hsu at his home an application and supporting papers for a temporary restraining order. At the same time, according to Mr. Marshall, he informed Dr. Hsu that he intended to take the application before a judge the next morning.

When he arrived at the Superior Court Clerk's office in the Pension Building on the morning of December 15, Mr. Marshall en-

---

1. D.C.Code 1973, § 22–2501, provides:

   Every person who, having taken an oath or affirmation before a competent tribunal, officer, or person, in any case in which the law authorized such oath or affirmation to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, wilfully and contrary to such oath or affirmation states or subscribes any material matter which he does not believe to be true, shall be guilty of perjury; and any person convicted of perjury or subornation of perjury shall be punished by imprisonment in the penitentiary for not less than two nor more than ten years. Any such false testimony, declaration, deposition, or certificate given in the District of Columbia, but intended to be used in a judicial proceeding elsewhere, shall also be perjury within the meaning of this section.

countered Dr. Hsu, who apparently was present on other legal business. Because he had amended the application in certain details, Mr. Marshall handed revised copies of his pleadings to Dr. Hsu, then proceeded alone to Judge Hyde's chambers. (It appears that other legal business kept Dr. Hsu from going along.)

After obtaining the judge's signature on the temporary restraining order, Mr. Marshall returned to the Pension Building, again encountering Dr. Hsu. He also saw District of Columbia Housing Inspector James Johnson, showed the temporary restraining order to him, pointed out that it was an "order," and said that he wanted Mr. Johnson to witness service upon Dr. Hsu. Mr. Johnson agreed, then observed Mr. Marshall hand the paper to appellant, who looked at it, then placed it with other papers nearby. Mr. Marshall certified on the original that he had effected service of the temporary restraining order at 11:30 a. m. on December 15.

When Dr. Hsu did not make repairs in accordance with the court order, Mr. Marshall sought an order to show cause why Dr. Hsu should not be held in contempt. On January 5, 1976, Judge Hyde conducted a hearing on both the order to show cause and on plaintiff's motion for a preliminary injunction. During the hearing, Dr. Hsu denied receiving the restraining order from "Marshall" or anyone else. He denied ever hearing about the TRO prior to a phone call from the judge's clerk, informing him that he should be present in court on January 5. (The date of this call was not specified, but Dr. Hsu implied that it was close to the hearing date.) The court evidently did not believe Dr. Hsu, for it found him contumacious and fined him $100.00.

The perjury indictment in the present case resulted from Dr. Hsu's denial of receipt of the TRO. The grand jury charged:

On or about January 5, 1976, within the District of Columbia, Shao T. Hsu, having taken an oath before a competent tribunal, that is, the Honorable DeWitt S. Hyde, an Associate Judge of the Superior Court of the District of Columbia, sitting in the Civil Branch of the Superior Court in Civil Action No. 11294–75, in a case in which a law authorized such an oath to be administered, that he would testify truly, did unlawfully, wilfully, knowingly and contrary to such oath, state material matters which he did not believe to be true, that is:

"THE COURT: you have heard the testimony of Mr. Johnson on the question of service of this temporary restraining order. What do you have to say about it?

MR. HSU: . . . I have never received . . . anyway, I have never received any order from Marshall. I have never received it. If I knew about the order, I would be looking for it, but the first time I knew about it was on that day the Clerk of Judge in Chambers called me and said I should come down here. That's the first time I knew anything about it. That's the first time I ever heard about the order . . . But I have never received any restraining order from anybody."

At his arraignment, Dr. Hsu expressed a desire to represent himself, and the court acquiesced. The jury convicted him; he now appeals.

## II. Adequacy of the Indictment

In assessing the sufficiency of an indictment, we must deal with three prescribed considerations: the pertinent constitutional criteria, derived from the Fifth and Sixth Amendments; the general rule governing the form of indictments, Super.Ct.Cr.R. 7(c); and a special rule on perjury indictments, D.C.Code 1973, § 23–323.

As a constitutional matter, an indictment must contain all the elements of the offenses charged and sufficiently apprise the defendant of the charges so that he or she can prepare to meet them. *Russell v. United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Nichols v. United States,* D.C.App., 343 A.2d 336, 340 (1975). Further, it must be clear enough, when coupled with the record of the proceedings, to preclude double jeopardy; *i. e.,* the nature of the acquittal or conviction

based on the indictment must be sufficiently clear to bar future prosecution for the same crime. *Russell v. United States, supra,* 369 U.S. at 764, 82 S.Ct. 1038; *Nichols v. United States, supra* at 340. As elaborated below, Dr. Hsu's principal argument on appeal is that the indictment is not sufficiently precise to satisfy these criteria.

If Dr. Hsu is correct, the constitutional validity of Super.Ct.Cr.R. 7(c), as usually interpreted, is called into question.[2] Rule 7(c), along with its identical federal counterpart, represents the modern approach to the pleading of crimes. *Nichols v. United States, supra* at 342. It purports to satisfy the constitutional mandate of specificity, *see Russell, supra,* while eliminating the burden and inefficiency of overly detailed pleading requirements. This modern view eschews emphasis on technical requirements and deficiencies, casting some of the burden on a defendant to pursue additional details, if needed, by way of a bill of particulars. Super.Ct.Cr.R. 7(f). *See United States v. Debrow,* 346 U.S. 374, 378, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Nichols v. United States, supra* at 343; *Hall v. United States,* D.C.App., 343 A.2d 35, 37–38 (1975); *Gebhard v. United States,* 422 F.2d 281, 285 (9th Cir. 1970).

According to appellant, the overall validity of Rule 7(c) need not be addressed.

A constitutional application of the rule—the constitutional requirement of specificity—will be assured by the gloss of the special provision on perjury indictments in the Criminal Procedure chapter of D.C.Code 1973, § 23–323.[3] Appellant contends that this statute, in calling for "the proper averment or averments to falsify the matter or matters wherein the perjury or perjuries is or are assigned," *id.,* mandates that the indictment highlight the falsity by spelling out, in detail, the government's version of the truth, without regard to the arguably less stringent requirements of Super.Ct. Cr.R. 7(c). We conclude that appellant is incorrect. Section 23–323 is purely procedural, *cf. Young v. United States,* 94 U.S. App.D.C. 54, 56, 212 F.2d 236, 238, *cert. denied,* 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137 (1954) (construes another clause in predecessor statute), and there is no legislative history that would add any credence to the argument that when the government indicts for perjury, § 23–323 modifies the balance struck between specificity and conciseness in Super.Ct.Cr.R. 7(c). We hold that as to the allegations of falsity required for a valid perjury indictment, the procedural requirements of § 23–323 and Super. Ct.Cr.R. 7(c) are the same.

The question, therefore, is whether the indictment meets the procedural require-

2. Super.Ct.Cr.R. 7(c) provides:

NATURE AND CONTENTS. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the prosecutor as attorney for the government. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement. Allegations made in one count may be incorporated by reference in another count. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or

omission did not mislead the defendant to his prejudice.

3. D.C.Code 1973, § 23–323 provides:

In every information or indictment for perjury, it shall be sufficient to set forth the substance of the offense charged upon the defendant, and by what court, or before whom the oath was taken (averring such court, or person or persons, to have a competent authority to administer the same) together with the proper averment or averments to falsify the matter or matters wherein the perjury or perjuries is or are assigned; without setting forth the bill, answer, information, indictment, declaration, or any part of any record of proceeding either in law or equity, other than as aforesaid; and without setting forth the commission or authority of the court, or person or persons before whom the perjury was committed; any law, usage, or custom to the contrary notwithstanding.

ments of these rules and, in turn, the constitutional requirements of *Russell, supra.* We can best pursue this inquiry by taking up appellant's specific assertions of error.

### A. *Is Falsity Alleged?*

Appellant contends, first, that the indictment fails to allege falsity and therefore violates the rule that an indictment must contain the essential elements of the crime charged. The elements of perjury are: (1) an oath, (2) before a competent person or tribunal; (3) a statement of false, (4) material facts; and (5) knowledge of the falsity. D.C.Code 1973, § 22–2501. *See United States v. Debrow, supra,* 346 U.S. at 376, 74 S.Ct. 113; *United States v. Young,* 113 F.Supp. 20, 21 (D.D.C.), *aff'd,* 94 U.S. App.D.C. 54, 212 F.2d 236 (1953), *cert. denied,* 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137 (1954). Because actual falsity is necessary to conviction, *see Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), appellant is correct in asserting that a perjury indictment must allege it. He is wrong, however, in claiming that the present indictment does not.

To be convicted of perjury under the D.C.Code, a defendant must have taken an oath to be truthful and violated that oath. The indictment in this case, in language similar to the statute, charged that appellant, "*having taken an oath . . . that he would testify truly, did* unlawfully, wilfully, knowingly and *contrary to such oath,* state material matters which he did not believe to be true . . . ." (emphasis added). This language clearly charged appellant with making false statements; *i. e.,* he took an oath to testify truthfully and did not do so. Appellant's contention that the indictment lacked an allegation of falsity is accordingly meritless.

### B. *Is Falsity Alleged with Sufficient Particularity?*

Appellant next asserts that if falsity is alleged, it is not stated with sufficient particularity. He may find support for this claim in a few older cases.[4] But the modern—indeed the better—view is contrary to his position.[5]

It is true that an indictment which tracks the statute will be defective unless it also "descends to particulars," *Russell, supra,* 369 U.S. at 765, 82 S.Ct. at 1038, 1048, enabling a defendant to prepare to meet the charge.

" 'Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.' [*Id.,* quoting *United States v. Hess,* 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888).]"

The "facts and circumstances" of the alleged falsity, however, usually can be stated quite simply. The United States Court of Appeals for the Ninth Circuit has noted:

In a perjury trial, assuming that, as in this case, the indictment lists the questions asked and the answers given, there is little else needed to enable the accused to prepare a defense. He knows that the questions have been asked, and he is told that the government believes his answers were false. He must be prepared to defend his answers. [*Gebhard v. United States, supra* at 285.]

The present case clearly conforms to this straight-forward analysis in *Gebhard.* In addition to repeating the statutory language, the indictment referred to Dr. Hsu's oath before Judge Hyde on January 5, 1976, in Civil Action No. 11294–75 and, further, specified the question and of-

---

4. Cases which arguably lend support to appellant are: *Bartlett v. United States,* 106 F. 884 (9th Cir. 1901); *United States v. Bougie,* 118 F.Supp. 359 (S.D.Cal.1954); *United States v. Westbrook,* 114 F.Supp. 192 (W.D.Ark.1953).

5. *Nelson v. United States,* 109 U.S.App.D.C. 392, 288 F.2d 376 (1961); *Gebhard v. United States, supra,* and *United States v. Marchisio,* 344 F.2d 653 (2d Cir. 1965) are among the cases supporting the modern trend and eliminate the need for any greater specificity than that furnished here.

fending answer he allegedly gave. We agree, following the Ninth Circuit approach, that this sufficed to inform Dr. Hsu of the alleged falsity.[6]

### C. *Is Materiality Alleged with Specificity?*

The indictment alleges that Dr. Hsu "did unlawfully, wilfully, knowingly and contrary to oath, state *material matters* which he did not believe to be true . . ." (Emphasis added). The modern view holds that no greater specification of materiality is required. *Gebhard v. United States, supra; United States v. Rook,* 424 F.2d 403 (7th Cir.), *cert. denied,* 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550 (1970); *Meyers v. United States,* 84 U.S.App.D.C. 101, 171 F.2d 800 (1948); *United States v. Simplot,* 192 F.Supp. 734 (D.Utah 1961). Appellant has supplied some contrary authority, which we reject. *See United States v. Cobert,* 227 F.Supp. 915 (S.D.Cal.1964). We believe that the better approach is to require no greater elaboration of materiality than the general averment found in Dr. Hsu's indictment, and to permit a defendant to clarify, as needed, through a bill of particulars. *See United States v. Debrow, supra,* 346 U.S. at 378, 74 S.Ct. 113. We reject appellant's claim that the simple allegation of materiality rendered the indictment deficient for lack of specificity.

### D. *Does the Face of the Indictment Belie Materiality?*

Appellant refers to his acknowledgement, set forth in the indictment, that he had learned about the temporary restraining order from the clerk of the judge in chambers prior to the date set for hearing on the order to show cause. He argues that this constituted an admission of actual receipt of the restraining order. He reasons that he thereby conceded contempt for failure to comply with an order actually received. This means, he says, that the gravamen of the indictment—the alleged falsity of his denial that Mr. Marshall (or anyone else) had served the order—is immaterial to proving his contempt. It follows that this false statement, because it was immaterial, could not have been perjurious. This contention is specious.

Dr. Hsu's acknowledgement that he had received notice of the temporary restraining order prior to the contempt hearing might have constituted an admission of contempt if the date of receipt had been sufficiently before the hearing date to permit compliance with the order. Dr. Hsu, however, did not mention the date that he became aware of the order, so he is not correct in claiming that he had admitted the alleged contempt. If anything, he implied that he received the clerk's call close to the hearing date itself— an implication contrary to admission of contempt. In any event, even if the date Dr. Hsu received word of the TRO had been reported—and was early enough to permit compliance before his scheduled date to show cause—it would not necessarily purge his earlier contempt during the period prior to the clerk's call, based on initial defiance of the temporary restraining order. Actual, proper service by Mr. Marshall—denied by Dr. Hsu—was material to his contumacy up until the time he was further notified by the telephone call from the judge's clerk.

Thus, we cannot find that Dr. Hsu's response, quoted in the indictment, constituted an admission of contempt; but even if it did, it would not necessarily negate the materiality of his denial of service of the temporary restraining order. We reject this final assault upon the sufficiency of the indictment.

We hold, based on case law applied to appellant's specific allegations, that the indictment fulfills the specificity requirements of Super.Ct.Cr.R. 7(c) and D.C.Code

---

**6.** Appellant's case is further weakened by the lack of timely objection to the form of the indictment. Our cases have recognized that the failure to object to an indictment at or before trial serves to limit appellate scrutiny to the lack of essential elements unless substantial prejudice is shown. *Nichols, supra* at 341; *Hall, supra* at 37; *Bush v. United States,* D.C. App., 215 A.2d 853, 855 (1966). *See* D.C.Code 1973, § 11–721(e). There has been no such showing in this case.

1973, § 23–323. We further hold, on the facts here, that compliance with these rules satisfies the constitutional criteria of *Russell v. United States, supra.* We turn, therefore, to appellant's claim that the trial court erroneously admitted much prejudicial evidence.

### III. *Admissibility of Certain Evidence*

Appellant seeks reversal on the basis of certain evidence admitted without objection at trial. Some was hearsay. (Mr. Johnson testified that Mr. Marshall had told him it was an "order" that Marshall was delivering to Dr. Hsu.) Other evidence allegedly did not have a proper foundation. (Contrary to Dr. Hsu's contention that he had hired Mr. Johnson on occasion, certain witnesses were permitted to testify that they had never seen Dr. Hsu pay Mr. Johnson.) Appellant claimed still other evidence to have been irrelevant or inflammatory. (Extensive evidence of Dr. Hsu's derelictions as a landlord was introduced, as well as a 15-page portion of the contempt hearing transcript, including a statement by the trial judge that either Dr. Hsu or Mr. Marshall had been lying.)

■ We have examined the entire record. Some of this evidence was relevant and properly admitted, such as portions of the contempt hearing transcript supplying the context of the perjured statement. *See Harrell v. United States,* 220 F.2d 516, 520 (5th Cir. 1955). In addition, some of that transcript, as well as a measure of the evidence about appellant's activities as a landlord, had a proper bearing on motive, intent, and wilfulness. *See United States v. Chapin,* 169 U.S.App.D.C. 303, 515 F.2d 1274, *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975); *United States v. Sweig,* 441 F.2d 114 (2d Cir.), *cert. denied,*

403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971). Other evidence, such as the hearsay, was cumulative and not prejudicial. Still other evidence was of doubtful propriety, such as the "negative evidence" without a proper foundation and the trial judge's statement in the contempt hearing transcript that one of the witnesses was lying.

■ After considering this evidence in the context of the entire trial—and despite the admission of some evidence which undoubtedly would have been excluded upon proper objection—we do not find the miscarriage of justice and impairment of a fair trial necessary to characterize the admission of any or all of this evidence as "plain error," absent objection or request for a limiting instruction at trial. *See Watts v. United States,* D.C.App., 362 A.2d 706, 709 (1976) (en banc).[7]

### IV. *Sufficiency of the Evidence: The Two-Witness Rule for Perjury*

Appellant challenges the substantive validity of his conviction on the ground that the evidence against him did not satisfy the time-honored "two-witness" requirement for perjury convictions. We agree with the government that this requirement was satisfied.

■ There was a time when the two-witness rule actually mandated that perjury be proved by two direct witnesses to the falsity. *See Arena v. United States,* 226 F.2d 227, 232 (9th Cir. 1955). That rule, however, has been modified. Today, it is "[t]he general rule [that] in prosecutions for perjury . . . the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set

---

7. We have not, in considering the existence of error or prejudice, accorded any weight to appellant's self-representation. As we later indicate, defendants who have knowingly and intelligently waived their right to counsel, *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and chosen to represent themselves will not receive any more indulgent appellate review than those represented by counsel. *United States v. Trapnell,* 512 F.2d 10 (9th

Cir. 1975) (per curiam). As the United States Court of Appeals for the Ninth Circuit has stated in similar circumstances: "Appellant complains that certain evidence came in that would have been held inadmissible had objection been interposed. This, of course, was a risk he took in representing himself." *Hodge v. United States,* 414 F.2d 1040, 1044 (9th Cir. 1969).

forth in the indictment as perjury." *Hammer v. United States*, 271 U.S. 620, 626, 46 S.Ct. 603, 604, 70 L.Ed. 1118 (1926). Thus, the rule is somewhat misnamed today, for while two witnesses will accomplish the task, one witness plus independent corroborative evidence will also suffice. *United States v. Cohn*, 452 F.2d 881 (2d Cir. 1971), *cert. denied*, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972); *United States v. Manfredonia*, 414 F.2d 760 (2d Cir. 1969); *United States v. Marchisio*, 344 F.2d 653 (2d Cir. 1965); *Arena v. United States, supra; McWhorter v. United States*, 193 F.2d 982 (5th Cir. 1952).[8]

There is some question about the quantity and character of evidence necessary to serve the independent corroboration function. We believe the better rule to be that the independent, corroborative evidence need not be sufficient, by itself, to demonstrate guilt; rather, it need only tend to establish an accused's guilt and be "inconsistent with the innocence of the defendant" when joined with the one direct witness's testimony. *Arena v. United States, supra* at 232, 236. Circumstantial evidence can suffice; and it is left to the jury to determine the trustworthiness of such corroborative evidence, be it direct or circumstantial. *United States v. Howard*, 445 F.2d 821, 822 (9th Cir. 1971).

In the record of the present case, we cannot find two direct witnesses to the falsity of Dr. Hsu's response. We agree with appellant's argument that Mr. Johnson was not a second, direct witness, for Mr. Johnson could not independently swear that a temporary restraining order had been served. Mr. Johnson's knowledge of the nature of the paper handed to Dr. Hsu was based completely on Mr. Marshall's telling him what it was. Still, Mr. Johnson's testimony provided adequate independent corroborative evidence to support Mr. Marshall's assertion that a temporary restraining order was delivered. He noted the word "order" on a paper and witnessed Mr. Marshall gave it to Dr. Hsu at approximately the time it was allegedly served. We believe that this furnished the degree of corroboration of the falsity of Dr. Hsu's denial which is contemplated by the modern two-witness rule. At least circumstantially, the details within Mr. Johnson's independent knowledge corroborated Mr. Marshall's direct testimony of Dr. Hsu's perjury.[9] We therefore find sufficient evidence from which a reasonable jury could find appellant guilty of perjury beyond a reasonable doubt. We reject appellant's reliance upon the "two-witness" rule.

## V. *Waiver of the Right to Counsel*

Appellant conducted his own defense. On appeal, he contends that his decision to do so did not constitute a knowing and intelligent waiver of his Sixth Amendment right to assistance of counsel. Because the record does not show that the trial court elicited such a waiver, as required by Supreme Court precedent, we must reverse appellant's conviction and remand for a new trial.

### A. *The Law Applicable to Waiver*

The seminal case on waiver of the right to counsel, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), defined waiver as "an intentional relinquishment or

---

8. The rationale and purpose of the rule has been expressed by the United States Supreme Court:

   In order that witnesses may be free to testify willingly, the law has traditionally afforded them the protection of certain privileges . . . . Since equally honest witnesses may well have differing recollections of the same event, we cannot reject as wholly unreasonable the notion that a conviction for perjury ought not to rest entirely upon "an oath against an oath." . . . . [I]mplicit in [the rule's] evolution and continued vitality

   has been the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted. [*Weiler v. United States*, 323 U.S. 606, 609, 65 S.Ct. 548, 550, 89 L.Ed. 495 (1945).]

9. We emphasize that this corroboration is based on Mr. Johnson's observations; it is not drawn from Mr. Johnson's hearsay testimony about Mr. Marshall's statements. *See* Part III, *supra*.

abandonment of a known right or privilege," *id.* at 464, 58 S.Ct. at 1023, and cautioned that any such waiver must be "intelligent and competent." *Id.* at 465, 58 S.Ct. 1019. Throughout the years since *Johnson*, the Supreme Court, in varying formulations, has consistently reaffirmed this precept. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) ("the accused must 'knowingly and intelligently' forego those relinquished benefits"); *Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 888, 8 L.Ed.2d 70 (1962) (accused must "intelligently and understandingly waive the assistance of counsel"); *Von Moltke v. Gillies*, 332 U.S. 708, 727, 68 S.Ct. 316, 325, 92 L.Ed. 309 (1948) (waiver must be entered "competently, intelligently, and with full understanding of the implications"); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942) (accused may waive counsel "if he knows what he is doing and his choice is made with eyes open")

In *Faretta, supra,* as in the present case, the defendant-appellant unquestionably had expressed a desire to represent himself. Contrary to the present case, however, the trial judge in *Faretta* concluded that the defendant "had not made an intelligent and knowing waiver" of counsel, *id.,* 422 U.S. at 809, 95 S.Ct. at 2529, ruled that he "had no constitutional right to conduct his own defense," *id.* at 810, 95 S.Ct. at 2529, appointed the public defender to represent him, and rejected his request to act as co-counsel. The Supreme Court vacated the judgment. Recalling its dictum in *Adams, supra,* that the Sixth Amendment right to counsel implied a "correlative right to dispense with a lawyer's help," *id.,* 317 U.S. at 279, 63 S.Ct. at 241, the Supreme Court held that the right to represent oneself is constitutionally guaranteed, provided that the accused "knowingly and intelligently" elects to forego "the traditional benefits associated with the right to counsel." *Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541. If a defendant gives such a valid waiver, it follows, according to *Faretta,* that a state cannot constitutionally "force a lawyer upon him." *Id.* at 807, 95 S.Ct. 2525.

■ Citing the waiver requirements of previous decisions, *Johnson, supra; Adams, supra; Von Moltke, supra,* the Court elaborated that a defendant expressing a desire to go forward pro se "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta, supra* at 835, 95 S.Ct. at 2541 (*citing Adams, supra,* 317 U.S. at 279, 63 S.Ct. 236). The Court's emphasis that the "record . . . establish" the waiver is important. A number of years earlier, the Court had faulted a reviewing court's acceptance of a trial judge's finding of waiver that was not evident from the transcript.

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. [*Carnley v. Cochran, supra,* 369 U.S. at 516, 82 S.Ct. at 890.]

*See Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. 1019; *Maynard v. Meachum,* 545 F.2d 273, 277–79 (1st Cir. 1976); *Stepp v. Estelle,* 524 F.2d 447, 455 (5th Cir. 1975); *Cooley v. United States,* 501 F.2d 1249, 1252 (9th Cir. 1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *United States v. Dujanovic,* 486 F.2d 182, 188 (9th Cir. 1973); *People v. Reason,* 37 N.Y.2d 351, 355, 372 N.Y.S.2d 614, 617, 334 N.E.2d 572, 575 (1975). Thus, the burden is not on a defendant-appellant to show that the waiver was less than knowing or intelligent; the burden is on the government to show from the record that the statements or circumstances at the time of the putative waiver demonstrate that the appellant "intelligently and understandingly waive[d] the assistance of counsel." *Carnley v. Cochran, supra,* 369 U.S. at 513, 82 S.Ct. at 888.

■ Given, therefore, that "the trial court is charged in the first instance with the serious and weighty responsibility to ensure that the trial of an accused is conducted with solicitude for his essential right

to have the assistance of counsel," *Monroe v. United States,* D.C.App., 389 A.2d 811, at 816 (1978), the question becomes: what steps must a trial court take—and the record reflect—to assure that the waiver of one's Sixth Amendment right to counsel, inherent in the desire to proceed pro se, is "knowingly and intelligently" made, such that a trial court will not encounter reversal for accepting the defendant's decision?

▮ Initially, we acknowledge that the right to counsel and its counterpart—the right to proceed pro se—put the trial court in a difficult position. If a defendant asks for self-representation, the court risks reversal for denying the request (*Faretta*) or granting it (*Dujanovic*). The only way to avoid the risk, therefore, is for the trial court to conduct a searching inquiry into "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst, supra,* 304 U.S. at 464, 58 S.Ct. at 1023.

Justice Black has made clear how carefully and precisely such an inquiry should be.

> To be valid such waiver [of counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances . . . ..
> [*Von Moltke v. Gillies, supra,* 332 U.S. at 724, 68 S.Ct. at 323 (plurality opinion).]

We are aware of no court which has held that a waiver, to be valid, must emerge from a colloquy between trial judge and defendant covering every factor specified by Justice Black. The courts have perceived his list as a catalog of concerns for trial court consideration, not as a prescribed litany of questions and answers leading to mandatory reversal in the event that one or

more is omitted. *See Spanbauer v. Burke,* 374 F.2d 67, 71–73 (7th Cir. 1966), *cert. denied,* 389 U.S. 861, 88 S.Ct. 111, 19 L.Ed.2d 127 (1967). It is clear, nevertheless, that absent virtually the complete inquiry prescribed by Justice Black, the appellate courts cannot uphold the finding of a valid waiver unless the inquiry of record is buttressed by a compelling case of circumstantial evidence that the pro se defendant knew what he or she was doing. For example, in *United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131, 134 (2d Cir. 1975), *cert. denied,* 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976), the court upheld a finding of waiver, based on less than in-depth inquiry, when the record made clear that a defendant had had many experiences with the court system, that he made his decision to proceed pro se after 12 days of trial with assistance of counsel, that counsel remained at his side, that these circumstances evidenced considerable knowledge of the consequences of acting pro se, and that defendant's waiver of counsel accordingly "was in part a strategic ploy." Similarly, in *United States v. Rosenthal,* 470 F.2d 837, 845 (2d Cir. 1972), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973), where the court noted that the specific "factual background" may in some instances excuse the judge's failure to give "explicit warning and advice" regarding the waiver of counsel, the court stressed that defendant-appellant previously had been through an earlier trial "involving similar factual and legal issues," and that counsel remained at his side while he went forward pro se.

▮ We are reluctant to hold that a specific list of inquiries must be covered in every case. We conclude, however, that except for the unusual case, the conviction of a pro se criminal defendant will be vulnerable to reversal unless the trial court has followed a script covering the questions specified by Justice Black in *Von Moltke, supra.* Further, in cases where a defendant insists on acting as his own lawyer without a member of the bar present to advise, the trial court's script, in anticipation of other

"dangers and disadvantages," *Faretta, supra,* 422 U.S. at 835, 95 S.Ct. 2525, should make a defendant aware of major pitfalls, such as the consequences of taking (and not taking) the stand, inadequately conducting voir dire, and failing to make objections to evidence and to jury instructions.[10]

Obviously, the Constitution does not require a trial judge to give an insistent pro se defendant a short course in criminal law and procedure; a defendant's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 836, 95 S.Ct. at 2541. The Constitution, however, does require the kind of interchange (including references to a defendant's background and experience) which, on the record, gives an appellate court confidence that the pro se defendant knew the possible adverse consequences of his or her decision and consciously accepted the risk.[11]

### B. The Waiver in This Case

The nub of the problem in this case is that the record does not reflect that appellant understood the likely consequences—in a perjury-felony case—of attempting to represent himself.

At his arraignment on June 30, 1976, after being informed of his right to counsel or self-representation, appellant expressed a desire to "represent myself, pro se." The trial judge made no inquiry at all; he permitted appellant to proceed with his own defense. Almost two months later, at a motions hearing on August 20, 1976, appellant called the case "in my opinion a

trivial matter." A few minutes later, the trial judge made his first—and only—inquiry about appellant's understanding of what he was getting into.

THE COURT: . . . Now, have you seen jury trials? Are you generally familiar with how they go?

DR. HSU: Yes. In landlord tenant cases. I have several times.

THE COURT: Okay. If you have any questions about rights or procedures at any time just stop and come up here and I will go over them with you because I want to make sure that you understand them. However, I have to treat both sides equally in the process, but if there are any problems about proof or how things come in or anything like that, we can discuss it at the bench and straighten it out.

The complete inquiry by the court, therefore, was limited to one question about appellant's familiarity with jury trials in general—to which appellant gave a limited response, referring to civil "landlord tenant cases." The court did not attempt to broaden appellant's understanding by contrasting a criminal felony trial with a landlord-tenant proceeding. It follows, therefore, that if a valid waiver is to be found, it must derive from facts and circumstances of record outside the colloquy between the judge and Dr. Hsu.[12]

Perhaps the most obvious question is whether Dr. Hsu's educational credentials—a Ph.D. in engineering—coupled with his unhesitating, unequivocal decision to proceed pro se, should conclusively support

---

**10.** We have in mind the same kind of thoroughness as that represented by Super.Ct.Cr.R. 11 when the court accepts a guilty plea.

**11.** In *Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. 1019, the Court required the waiver to be "intelligent and competent." We have not had to address this latter, competency issue here, although in other cases that could pose the threshold question.

**12.** The government points out that in addition to the colloquies discussed above in the text, the court, at arraignment, read the indictment to appellant, referred on occasion to perjury as a felony, explained the necessity of fingerprint-

ing, imposed a sizable bond, and specifically apprised appellant of his right to counsel. Taken together, these items do not add enough for inferring a valid waiver; they are not considerations of the substantive variety mentioned in *Von Moltke, supra,* 332 U.S. at 724, 68 S.Ct. 316; *e. g.,* the nature of perjury, the included offenses, the range of punishments, possible defenses, and mitigating circumstances. The items referred to by the government did not ensure appellant's awareness of the consequences of his choice. We cannot infer sufficient understanding from this circumstantial evidence.

the proposition that he waived the right to counsel "knowingly and intelligently." While perhaps appealing, this argument is actually beguiling, for intellectual acumen in one field does not imply knowledge or valid perceptions about another. General intelligence and education do not equip one to cope with the "science of law." *Johnson v. Zerbst, supra* at 463, 58 S.Ct. 1019.

We cannot say, absent searching inquiry on the record, that Dr. Hsu, because he had a Ph.D. in engineering, should be deemed intelligent enough to have waived counsel "knowingly and intelligently." Were we to take such an automatic approach, we should have to think through the relevance of a master's degree—or a bachelor's degree, an I.Q. test, a book one has written, or a professional accomplishment. We do not believe that judicial approval of the waiver of a constitutional right can be premised automatically on unrelated intellectual achievements. This point is especially important because one's degree of intellectuality has no certain bearing on the question whether one has made an informed judgment about the risks of conducting a felony trial pro se. If a waiver is to be knowing and intelligent, a defendant must have the necessary information. Dr. Hsu's Ph.D. did not give it to him.

The government argues, next, that appellant's extensive experience as a pro se litigant provides substantial evidence of a knowing and intelligent waiver. Previous experience, it is true, is relevant to the inquiry, *United States ex rel. Konigsberg v. Vincent, supra;* and it is true that appellant has represented himself on numerous landlord-tenant, housing-code violation, and traffic cases. Putting aside the fact that the record does not show the trial court relied on this experience as a basis for accepting appellant's waiver, we conclude that this evidence does not sufficiently support the government's position to sustain its burden to demonstrate waiver.

There is precedent for an appellant court's taking judicial notice of the existence of other proceedings involving a defendant, in order to show his general familiarity with criminal procedure as that may bear—along with other evidence—on the question of waiver. *See Hensley v. United States,* 108 U.S.App.D.C. 242, 245 n.6, 281 F.2d 605, 608 n.6 (1960) (waiver of jury trial). Our case, however, is different from *Hensley* in two critical respects. First, *Hensley* used judicial notice as supplementary evidence of waiver. Here, however, to affirm the government's position we would have to use judicial notice of Dr. Hsu's other proceedings as virtually the entire record of a knowing and intelligent waiver, given the inadequacy of the trial court's colloquy with appellant on that question. Second, *Hensley* concerned waiver of a jury by a defendant who had been acquitted in two previous jury trials; his prior experience was thus directly in point. *See United States ex rel. Konigsberg, supra; United States v. Rosenthal, supra.* Dr. Hsu's previous pro se experience, however, was in relatively less serious cases of a sort unrelated to the present felony prosecution; thus, we would have to note not only the existence of the other proceedings but also their details, in order to evaluate whether Dr. Hsu had acquired enough acumen to justify our imputing to him a knowledgeable waiver. We conclude that we would be temporizing with appellant's constitutional rights were we to do so. We would be creating precedent for upholding waivers based on less-than-compelling evidence almost entirely outside the record—evidence not dealt with at all, so far as the record shows, by the trial judge. We decline to do so.

Yet, even if we were to evaluate Dr. Hsu's other experiences in court for the purpose of discerning waiver, we would have to say that his other trials appear to refute the government's position as much as support it. To the extent that the record in this case reflects these other proceedings, we must acknowledge the possibility that Dr. Hsu's pro se experience with minor civil and criminal matters actually may have misled him. There is no evidence that he previously had defended a serious felony charge; and his remarks to the trial judge indicate that his extensive experience with

lesser matters may have led him to believe—erroneously—that his perjury prosecution, involving a jury trial, was "trivial."

One can respond to this point, of course, by arguing that Dr. Hsu's comments and responses calling his predicament "trivial" should be read, instead, as reflecting not ignorance but arrogance—as complete disdain for the legal system. (As the dissent at note 8, *infra,* indicates, the trial judge apparently believed, on the basis of other, unspecified Superior Court cases, that Dr. Hsu was a deceitful, disrespectful person.) Although this could be the case, one's character and motivation behind the choice to act pro se—even if uncommendable—cannot be said to reflect whether the decision is an informed one.[13] We simply cannot tell from the record whether Dr. Hsu's pro se election was a shrewd tactical maneuver, calculated in event of conviction to achieve the very result we reach here; or, instead, whether Dr. Hsu, with his extensive but narrow legal experience, was a victim of his own arrogance and ignorance. If we were to assume the former, we would be presuming a knowing and intelligent waiver without a record basis—in fact, contrary to the plain language of the interchange between Dr. Hsu and the court. We therefore would be finding a waiver based virtually on appellant's other minor trial experience alone. This we cannot do. *See Carnley v. Cochran, supra;* cf. *Hawkins v. United States,* D.C. App., 385 A.2d 744, 746–47 (1978) (valid waiver of jury trial requires both a written waiver and oral assent in open court "on the record").

■ Our dissenting colleague finds a knowing and intelligent waiver based in part on a perception that appellant manifested some skill in handling his case and was financially able to hire counsel if he had truly needed one. We do not believe that a defendant's pro se performance at

trial is relevant to the question whether he made a knowing and intelligent waiver prior to trial. The existence of a constitutional pretrial waiver cannot be made to turn on an appellate court's view as to whether, in retrospect, the defendant used relatively good judgment in representing himself at trial. A valid waiver, if there was one, was made prior to trial—or not at all.

■ Nor do we believe, finally, that appellant's ability to afford counsel has a bearing on the existence of a valid waiver. No case has so held. Nor can we perceive how money in the bank, any more than a Ph.D. credential, suggests a basis for finding that a defendant made an informed waiver decision.

In thinking through the waiver issue, we have been aware that waivers of fundamental constitutional rights—particularly the right to counsel—are not favored. Forty years ago, the Supreme Court observed:

> It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." [*Johnson v. Zerbst, supra,* 304 U.S. at 464, 58 S.Ct. at 1023 (footnotes omitted).]

*See Carnley v. Cochran, supra.* As Justice Black emphasized again ten years later in *Von Moltke, supra:*

> To discharge [his or her] duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case . . . demand. The fact that an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. [*Id.,* 332 U.S. at 723–24, 68 S.Ct. at 323.]

---

**13.** The Ninth Circuit has put it well:

> The reasons for one charged with crime to waive the assistance of competent counsel in any given case range from the misguided or naive who just wants to tell the jury the truth, through the pressured one under the hardships of the accusation of crime and the sophisticated person enamored with his own ability, to the crafty courtroom experienced one who ruthlessly plays for the breaks. All eventually play the part of the proverbial fool. Accordingly, reasons for the waiver are not the concern of the trial court. [*United States v. Dujanovic, supra* at 186.]

*Faretta, supra,* obviously forces a court to consider the waiver question in a new light, now that an accused has a constitutional right to self-representation, as well as to assistance of counsel. And yet *Faretta* does not relax the historic standard for judging whether an effort to waive the right to counsel has been knowingly and intelligently made. Because the record of this case does not evidence that the trial judge "investigate[d] as long and as thoroughly as the circumstances of the case before him demand[ed]," *Von Moltke, supra* at 723–24, 68 S.Ct. at 323, and because there are no adequate bases of record on which to conclude that appellant chose his course "with his eyes open," we cannot hold that appellant waived his right to counsel.

We turn, therefore, to our disposition. Because the Supreme Court "has concluded that the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error,' *Chapman v. California* [386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705]," we conclude that "reversal is automatic." *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978).[14]

We note, in conclusion, that this case highlights one of the concerns of Justice Blackmun who, dissenting in *Faretta,* opined that among the future "procedural problems" and "questions" engendered by *Faretta* would be "the standards of waiver and the treatment of the *pro se* defendant, [which matters] will haunt the trial of every defendant who elects to exercise his right to self-representation." *Id.,* 422 U.S. at 852, 95 S.Ct. at 2549 (Blackmun, J., dissenting). We do not, however, find these problems insuperable. Once a pro se defendant makes a valid waiver of counsel, we do not believe that a trial court needs to treat that defendant any differently from a defendant represented by counsel.

The fact that a defendant represents himself does not alter the judicial role nor does it impose any new obligation on the trial judge. The defendant under those circumstances must assume the responsibility for his inability to elicit testimony. As stated by [the Ninth Circuit] in *United States v. Dujanovic, supra,* 486 F.2d at 188, '. . . one of the penalties of the appellant's self-representation is that he is bound by his own acts and conduct and held to his record.' [*United States v. Trapnell,* 512 F.2d 10, 12 (9th Cir. 1975) (per curiam).]

In any event, as long as a trial judge makes an inquiry sufficient to demonstrate a voluntary and intelligent waiver and preserves the foundation for his conclusion on the record, no waiver problem should arise.

The record here is not sufficient. If Dr. Hsu's conviction were affirmed, this decision would stand for the proposition that an ostensibly intelligent person, experienced in minor court cases, can be deemed—without court inquiry—to have waived the fundamental constitutional right to counsel in a major felony trial. Supreme Court authority forbids such a result. We reverse and remand for a new trial.

*Reversed and remanded.*

KELLY, Associate Judge, concurring in part and dissenting in part:

I concur, generally, in the opinion of the court except for Part V(B)—The Waiver in This Case.

By all accounts, appellant Dr. Shao T. Hsu is a gentleman of education, intelligence, confidence and arrogance. He is

---

14. Appellant has suggested that if we do not wish to reverse his conviction, we could, in the alternative, remand for an evidentiary hearing on the waiver issue. *See Von Moltke v. Gillies, supra,* 332 U.S. at 727–31, 68 S.Ct. 316 (Frankfurter, J., concurring). We fail to see how external evidence at this late date could demonstrate that Dr. Hsu possessed the required state of mind at the time of the alleged waiver. We reach this conclusion with awareness of the record and the government's failure to indicate that it has any such evidence (e. g., that appellant had carefully consulted with counsel prior to making his choice). We therefore decline to remand for further inquiry of that sort.

wealthier than most, and while our solicitude extends to the rich and to the poor when evaluating a waiver of the right to representation by counsel, we must bear in mind that we are concerned here with the retention of counsel of one's choice and not the appointment of counsel by the court.[1] The controlling authorities must, in my view, be read in light of this fact, for it is not without significance that the accused in those cases were almost without exception persons who have no ready access to counsel. *E. g., Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). There is no question here of offering counsel to appellant or denying appellant's request for counsel. Nevertheless, while appellant had an absolute constitutional right to represent himself at his trial, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the court could not have forced him to retain an attorney,[2] it is a fact that

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst*, 304 U.S., at 464–465, 58 S.Ct. 1019. Cf. *Von Moltke v. Gillies*, 332 U.S. 708, 723–724, 68 S.Ct. 316, 92 L.Ed. 309 (plurality opinion of Black, J.).

Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. at 279, 63 S.Ct. at 242. [*Id.*, 422 U.S. at 835, 95 S.Ct. 2525, 2541.]

The majority faults the trial judge for not being more explicit in his questioning of Dr. Hsu about his decision to proceed to trial pro se, suggesting that appellant failed to appreciate the seriousness of the charges against him. Actually, the conduct with which appellant was charged was simple: that in a specified previous trial, on one occasion, he lied under oath.[3] The indictment so charged, in one concise count. The record is clear that appellant understood this charge; that he persistently denied that he had lied (charging, in turn, that the witnesses against him perjured themselves); and, indeed, that he did consider the matter trivial. But the trial judge did not, and patiently explained to appellant each step in the criminal proceedings. The significance of appellant's statement that the trial court could easily determine who was right and who was wrong, in which the court acquiesced, is not apparent. The statement was made in the context of the government's insistence that the trial be by jury, but the trial was not a difficult one, even for a jury.[4] The fact that appellant was

1. Despite some rather expansive language, I do not read the majority opinion as saying that Dr. Hsu was entitled to appointed counsel.

2. "[I]t is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want." *Faretta v. California, supra* at 833, 95 S.Ct. at 2540.

3. Dr. Hsu was charged with saying: "Anyway, I have never received any order from Marshall. I have never received it. If I knew about the

order, I would be looking for it, but the first time I knew about it was on that day the Clerk of Judge in Chambers called me and said I should come down here. That's the first time I knew anything about it. He called me at home by telephone. That's the first time I ever heard about the order." Hsu adamantly maintained in the trial court that this statement was true.

4. The trial judge instructed the jury at the start of trial that "[t]he nub of this case is the issue of did the doctor, or did he not, not tell the truth on the issue of service of this document."

charged with perjury, a felony, made it no more complex.

The majority dismisses appellant's previous trial experience, including jury trials, as inconsequential.[5] It is fair to say, however, that from these experiences appellant was thoroughly familiar with his right to counsel and preferred—indeed insisted—on representing himself. I do not suggest that appellant was as knowledgeable in substantive law or legal procedure as an experienced attorney. Yet he did receive considerable assistance from the court, and displayed surprising aptitude in the handling of his case. For example, appellant moved well before trial to dismiss the indictment, albeit on factual rather than legal grounds, and appeared at the time to be familiar with the criminal rule of the trial court. Before trial,[6] Dr. Hsu participated with competence in a lengthy voir dire of the jurors and the court's rather intricate process of jury selection. The trial judge was concerned because of the extensive publicity about Dr. Hsu's business activities, and was careful to voir dire the prospective jurors for possible bias. In all, eleven prospective jurors were stricken for cause. During the trial itself, appellant exhibited considerable skill in his examination and cross-examination of witnesses, in making objections,[7] and presenting his defense. True, his own opening statement and testimony tended to be argumentative, but the court, where necessary, directed his remarks to the elicitation of facts. For my part, after scrutiny of the record, Dr. Hsu's conduct of this trial cannot be categorized as inept.

Appellant's motion for new trial also demonstrated his comprehension of the criminal proceedings against him and his confidence in his ability to proceed pro se. In it he alleged that because a majority of jurors were tenants, the jury was prejudiced against him; because of the widespread publicity about his affairs, the jury was biased against him. He also alleged that the jury did not understand that according to the statute (D.C.Code 1973, § 22–2501), to return a verdict of guilty on the charge of perjury, the jury must be convinced beyond a reasonable doubt not only that the accused testified falsely but also that he did not, at the time, believe his testimony to be true; and, further that perjury cannot be proved by the uncorroborated testimony of one witness. These alleged errors were preserved for appeal, but have not been sustained in the opinion of the court.

The court's opinion commends to the trial court's consideration the concerns of Mr. Justice Black in *Von Moltke v. Gillies, supra*, that is, apprehension of the nature of the charges, the statutory offenses included therein, the range of allowable punishments, *circumstances in mitigation thereof*, and all other facts essential to a broad understanding of the whole matter (whatever they may be). In my opinion, Dr. Hsu understood the nature of the charges. No lesser-included statutory offenses have been suggested, nor any mitigating or "other facts" advanced to indicate that Dr. Hsu's decision, which the majority recognizes was unhesitating and unequivocal, was less than knowing or intelligent. Only the range of allowable punishments (which appear in the statute with which appellant was familiar) does not appear to have been told to appellant. I would not hold this one flaw to be fatal, however, in the circumstances of this case.

The authorities speak often about the old saying that one who represents himself in court has a fool for a client. It is clear,

---

5. Some of the cases in which Dr. Hsu appeared pro se are cited in the government's brief, p. 8. *See also* sentencing transcript, R. 184 *et seq.* Dr. Hsu has retained counsel on appeal for the purpose of writing the brief. *E. g., Hsu v. District of Columbia*, Nos. 11227, 11228, 11241.

6. Jury selection was completed on the evening of September 9, 1976. The trial itself began and ended on September 10, 1976.

7. One such objection, which illustrates appellant's perception of the proceedings was:

however, that whatever else he is,[8] Dr. Hsu is no fool. This is one instance, probably a rare one, where I would conclude that

> . . . although explicit warning and advice by the court may be necessary in some cases, . . . to give adequate assurance that any waiver of the right to counsel is knowing and voluntary, on the facts of this case, we find that the court's failure to do so was not error. [*United States v. Rosenthal*, 470 F.2d 837, 845 (2d Cir.), cert. denied, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1972) (citations omitted).]

I would affirm.

---

"Your Honor, this is a perjury case, not going through a landlord case again. The housing violation, it has nothing to do with it."

8. At sentencing the trial judge expressed his opinion to Dr. Hsu: "You have no respect for the truth. You have no respect for the American justice system. You have spread the can-

cer of lies and deceit throughout this court unparalleled in my memory. There is not a division of this court that has not suffered from the lies . . . ."