Michael G. **FOWLER**, Appellant,

v.

**UNITED STATES**, Appellee.

**Clifton L. THOMAS**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 13435, 13447.

District of Columbia Court of Appeals.

Argued Sept. 27, 1979.

Decided Jan. 29, 1980.

Charles W. Halleck, Washington, D. C., for appellant Fowler.

Henry W. Asbill, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on brief, for appellant Thomas.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the brief was filed and the case was argued, John A. Terry, Michael W. Farrell and Harry R. Benner, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KELLY, FERREN and PRYOR, Associate Judges.

KELLY, Associate Judge:

Appellants Michael G. Fowler and Clifton L. Thomas appeal their jury convictions for armed robbery and armed kidnapping under D.C.Code 1973, §§ 22–2201, 22–2901, and 22–3202.[1] This court consolidated their appeals sua sponte.

Appellants assign numerous errors to the trial court in support of their demand for a new trial. We have carefully considered appellant Fowler's arguments and find them without merit.[2]

Although appellant Thomas (hereinafter appellant) propounds several arguments for reversal, we find none of them persuasive.[3]

---

1. Appellant Fowler was also convicted on two counts of assault with a dangerous weapon, D.C.Code 1973, § 22–502. Both men were sentenced to concurrent terms of fifteen years to life imprisonment. There were three other codefendants. Robert Dexter Brown was convicted along with appellants of armed robbery and armed kidnapping. Bruce D. Holder pleaded guilty after his trial was severed from appellants' trial. Walter Curry was not apprehended or tried until after the others were convicted.

2. Appellant Fowler argued that (1) the admission of evidence regarding an alleged incident of armed robbery involving two of his codefendants was reversible error; (2) the trial court deviated fatally from the standard "red book" jury instructions; (3) the prosecutor's conduct was improper and prejudicial; (4) the last minute severance of one codefendant's trial prejudiced appellant's ability to present a defense; and (5) the trial court manifested prejudicial bias towards appellants. We conclude that whatever errors may have occurred were harmless. We also note that in several instances appellant Fowler did not establish proper standing to appeal. Fowler's final argument, that the cumulative effect of these errors denied appellant his right to a fair trial, is without merit.

3. Appellant Thomas' arguments included a speedy trial complaint, an argument that the trial court abused its discretion in denying appellant's lineup motion and in admitting evidence from a show up and in court identifications, and by failing to voir dire the jury after it viewed appellant in handcuffs. These arguments are without merit. We need not consider the appellant's contention that the trial court erred by failing to subpoena or compel the prosecutor to stipulate that a witness' testimony was inaccurate. In light of our decision that appellant's decision to appear pro se was voluntary, knowing, and competent, his failure to impeach that testimony on cross-examination must be deemed his own error—a risk inherent in the decision to proceed in propria persona. See Hsu v. United States, D.C.App., 392 A.2d 972, 987 (1978): "Once a pro se defendant makes a valid waiver of counsel, we do

The only issue that requires extended discussion is his contention that the trial court, by granting his request to appear pro se without a full inquiry of the sort outlined in *Hsu v. United States*, D.C.App., 392 A.2d 972 (1978),[4] violated his Sixth Amendment right to the effective assistance of counsel.

Our reasons for affirming the trial court's decision are presented in three parts: first, we set forth the relevant facts of the case; second, we discuss the pre-*Hsu* state of the law regarding waiver of counsel; and third, we analyze the *Hsu* standards governing a trial court's pro se inquiry and explain their relevance and application to the facts of this case.

### I

The testimony at appellants' trial reveals that, on the evening of January 27, 1977, five men forced Jeffrey Akers at gunpoint into the back seat, and later the trunk, of their car, and robbed him of approximately $125. Once released, the victim, ignoring his abductors' warnings, described the assailants and their car to the police. At a show up within an hour of the incident, he identified four of the car's passengers, including appellants Thomas and Fowler, and accurately foretold the contents of the unopened car trunk.

Appellant Thomas was arrested on January 28. On January 29, Attorney Hipskind was appointed to represent appellant.

We set forth, at some length, the chronology of events (based on documents of record considered by the trial court) following appellant's assignment of counsel and preceding appellant's official request, on the first day of trial, for permission to appear pro se:

(1) February 2. Bail was set at $10,000 by Judge Alfred Burka.

(2) February 14. Appellant wrote a letter to Attorney Hipskind accusing him of neglecting appellant's defense and of underestimating his intelligence. He expressed disagreement with Hipskind's "defense and tactics" and made the following suggestions (in reference to the government's witness' second failure to appear at a lineup):

"[W]hy don't we press for a dismissal for lack of evidence? Or file for a writ of habeas corpus? Or *at least* another line-up so that the government will be forced to dismiss the case themselves. Don't tell me that some of these things can't be done because any kid with a prisoner's rights booklet can prove you wrong! . . . I can assure you total success with this case 'now' if you'd file for dismissal or another line up! In either case whatever you file always, always! send me a copy for my records so that we keep things straight."

(3) March 24. Appellant filed a pro se handwritten habeas corpus petition and a petition for review of his conditions of release, replete with legal citations and references.

(4) April 2. Appellant requested that Judge Burka appoint new counsel, writing:

"I am not dazzled by the prospect of counsel representation, . . . I can clearly represent myself, not saying that I'm refusing representation by counsel, however. I've also been denied access to the jail's law facility! and so . . . would you please assign me adequate counsel or serve a court order on this jail demanding that I be allowed access to the law library each and every day that it's open? Either or both, just as long as I'm allowed to work on my legal defense. . . ."

(5) April 6. Attorney Hipskind filed a motion to withdraw. (On April 12, Judge Burka granted Hipskind's motion to withdraw and appointed Attorney Katherine Kravetz to represent appellant.)

(6) April 7. Appellant again wrote Judge Burka, referring to an earlier let-

---

not believe that a trial court needs to treat that defendant any differently from a defendant represented by counsel." *See United States v. Dujanovic*, 486 F.2d 182, 188 (9th Cir. 1973).

4. Our case of *Hsu v. United States, supra,* was not decided at the time of appellant's trial.

ter of March 22 (apparently the March 24 motion, see above). He accused Judge Burka of purposely "losing it":

"Looking back over some of your past cases, I've noticed that you have a morbid contempt for both pro se and handwritten motions and express this contempt by perpetually losing these motions . . . ."

He goes on:

"I would like to have two (2) counselors assigned me (as stipulated by law) due to the strong penalties, the severity of the offense, the amount of research and filing that is expected, and to even out the opposition! Should these or part of these requests be denied I respectfully request a hearing to be held to show cause."

This was not filed until April 12. The bond review motion was denied on April 15.

(7) April 24. Appellant made a handwritten request for a lineup or for any identification procedure except an in-court one or a "photographical identification where I'm not even certain of my rights being protected." He requested that the lineup take place before April 30, when he planned to shave his head because of "a scalp problem" (this motion was not received by the clerk's office until April 26), "or not hold me liable for any character [sic] alterations thereafter."

(8) September 23. Appellant wrote a lengthy letter to Judge Hamilton discussing the "fundamental right" under the Sixth Amendment which allows a defendant

"to present himself and his position to the jury not merely as a witness or through his attorney but as a man on trial who elects to plead his own cause;

that he is also possessed of a moral right to, at least, make a personal effort to exculpate himself and that denial of that right is not to be because of the estimations of someone else that the practical position of the defendant will be enhanced through total representation by another. . . . [T]hus, I present to you my request that I be allowed to proceed as co-counsel in my defense . . . . I've had quite a bit of experience with legal proceedings and where I'm lacking I'm confident that Ms. Kravetz is not and will prove most helpful." [5]

(9) December 6. Before the pretrial motions hearing began, Judge Burka and appellant had the following exchange:

THE COURT: . . . .

All right. Mr. Thomas, it is my understanding that you wish to represent yourself. You do not wish to have an attorney during the trial of this case, only for the purpose of the motion which is technical.

MR. THOMAS: That's correct.

THE COURT: All right. Do you understand that you have an absolute right to an attorney?

MR. THOMAS: Yes, sir.

THE COURT: No one can take this right away from you. Has anyone threatened you in any way or promised you anything at all in order to have you give up your right to an attorney?

MR. THOMAS: No one has promised me anything.

THE COURT: Why do you wish to give up your right to an attorney, sir? Not that you have to give me any reason. It is your right under the Constitution.

MR. THOMAS: I don't choose to have an attorney, sir.

---

5. Appellant concedes that Ms. Kravetz was "available for consultation" throughout appellant's trial, but contends that the court improperly refused to permit him to seek her advice (and that of his codefendant's counsel) during his floundering cross-examination of complainant Ackers. We find the record regarding this incident too ambiguous to determine what actually occurred. In any event, the availability of counsel during trial is not a prerequisite to a valid waiver, since the validity of a waiver is to be decided "prior to trial—or not at all." *Hsu v. United States, supra* at 986. Once a valid waiver occurs the trial court need not treat (the pro se) defendant any differently from a defendant represented by counsel. *Id.* at 987, and see cases cited therein.

THE COURT: All right.

MISS KRAVETZ: Your Honor, I have . . . advised Mr. Thomas that I would represent him on the motion. I have also advised him that I would be present, sitting somewhere nearby during the time of trial so if there are legal questions that arise, I can advise him.

. . .

THE COURT: It makes no difference to me. Once Mr. Thomas gives up his right to an attorney, he will represent himself.

MISS KRAVETZ: I told him I would be present the whole time.[6]

## II

Pro se representation problems stem from two distinct constitutional concerns: one, the express Sixth Amendment right to effective representation of counsel; the other, a recently discovered, but long existing, implied Sixth Amendment right to conduct one's own defense. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

As a means of defending the former, the Supreme Court held, in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), that a trial court must carefully evaluate waivers of the right to counsel to ensure that they are both intelligent and voluntary. This evaluation "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *Id.* at 464, 58 S.Ct. at 1023. *Cf. Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality opinion of Black, J., setting forth a list of the factors that should be considered).

More recently, the Supreme Court held that a proper record of the factors justifying the trial court's acceptance of a waiver of counsel was essential:

Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. [*Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).]

The *Faretta* opinion, formulating a constitutional right independent of the Sixth Amendment, to "make one's own defense personally," *Faretta v. California, supra,* 422 U.S. at 819, 95 S.Ct. at 2533, reasoned that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.* at 817, 95 S.Ct. at 2532. The Court analyzed the history of the right to counsel at great length and concluded that this country's founders saw it as "supplement[ing] the primary right of the accused to defend himself . . . ." *Id.* at 830, 95 S.Ct. at 2538. Thus, counsel, "however expert, is still an assistant . . . an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally." *Id.* at 820, 95 S.Ct. at 2533.

▇ *Faretta* thus gave new status to what had previously been considered merely the inverse of the right to effective counsel, and created a new, independent "primary right" to appear pro se. Inevitably, there arose a conflict between the right to effective representation and the right to represent oneself, since most defendants are not effective defense attorneys. Trial courts faced a critical conundrum, since an infraction of the basic right to counsel under the Sixth Amendment is never harmless error. *Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426

---

**6.** It is not clear to us, from this exchange, that appellant's waiver was, as he now claims, contingent on Ms. Kravetz' continuing presence in the courtroom. Whatever appellant's intent was at the time, it was not made clear to or apparently accepted by the trial court. In any event, Ms. Kravetz was in fact present throughout the trial. The concept of a "contingent

waiver" of counsel would, in our opinion, be antithetical to the *Hsu* precept that waiver be established pretrial, since a "contingent waiver" implies that a trial court, even after allowing a pro se appearance, must be continuously prepared to, sua sponte, revoke its permission, based on a defendant's actual conduct during the trial.

(1978); *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).

## III

In *Hsu* we acknowledged the trial court's dilemma: it risked reversal either way, by denying the self-representation request, under *Faretta*, or by granting it, under *Johnson v. Zerbst* and its progeny. *See Hsu v. United States, supra* at 983. Thus, we required an on-the-record colloquy between the prospective pro se criminal defendant and the court (in all but unusual cases in which comparable information is available in the record), in order to "[give] an appellate court confidence that the pro se defendant knew the possible adverse consequences of his or her decision and consciously accepted the risk." *Hsu v. United States, supra* at 984. *See Johnson v. Zerbst, supra*, 304 U.S. at 465, 468, 58 S.Ct. at 1023, 1024 (waiver required to be "intelligent and competent").

■ The list of factors that are to be considered in a *Hsu* inquiry bear on the "intelligent and competent" quality of a defendant's waiver and include: (1) his prior experience or familiarity with the court or criminal justice system, (2) whether his decision was made with the assistance of counsel, (3) whether the choice was a strategic ploy, and (4) the defendant's awareness of the weighty consequences attending his waiver, including "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof . . . ." *Von Moltke v. Gillies, supra* 332 U.S. at 724, 68 S.Ct. at 323 (plurality opinion).

■ In other words, "a penetrating and comprehensive examination of all the circumstances," *id.*, is necessary. However, although the trial court "will be vulnerable to reversal unless [it] has followed [Justice Black's *Von Moltke*] script," *Hsu v. United States, supra* at 983, this inquiry is not mandatory if there is "a compelling case of circumstantial evidence that the pro se de-

fendant knew what he or she was doing." *Id.* We cited *United States v. Rosenthal*, 470 F.2d 837 (2d Cir. 1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973), for the proposition that the specific "factual background" of a given case may excuse a judge's failure to conduct a complete waiver inquiry. *Hsu v. United States, supra* at 983.

## IV

■ Looking to the facts and circumstances in this case (without considering the defendant's pro se performance at trial, since "[a] valid waiver, if there was one, was made prior to trial—or not at all," *Hsu v. United States, supra* at 986) we find that (1) Thomas was represented and advised by counsel up to and including the time his waiver decision was made (unlike *Hsu* ); (2) appellant was aware of the seriousness of the charges against him (*viz.* his April 7 letter to Judge Burka, referring to "the strong penalties, the severity of the offense"); (3) he was highly conscious of the advantages and the responsibilities of legal representation (on April 7 he requested *two* lawyers because of "the amount of research and filing . . . expected, and to even out the opposition"; he repeatedly asked for "adequate" counsel, and requested greater access to the prison law library); (4) he knew a substantial amount about criminal law (see his April 24 lineup request, his impassioned discussion of the pro se right in the September 23 letter, his March 24 habeas corpus petition and the petition for review of his conditions of release; and also his advice on legal tactics in the February 14 letter to Attorney Hipskind).

The extensive record of appellant's pretrial activities that was before the trial court (which was ruling without the benefit of our opinion in *Hsu* ) presented a "compelling case of circumstantial evidence that [appellant] knew what he . . . was doing." *Hsu v. United States, supra* at 983. Thus, the limited inquiry into the voluntari-

ness[7] of appellant's waiver was sufficient. This case is factually much closer to the one before the court in *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131 (2d Cir. 1975), than to our case of *Hsu*. As that court observed, "a case where [the] defendant is vehemently asserting his right of self-representation is not truly a case of waiver of a constitutional right; it is a decision to assert one constitutional right instead of another. At least this is true in a situation . . . where [the defendant] was under no pressure to forego the assistance of counsel" and where the defendant's "decision was in part a strategic ploy."[8] *United States ex rel. Konigsberg v. Vincent, supra* at 133–34. Appellant was well aware "that there are technical rules governing the conduct of a trial, and that presenting a defense is not a simple matter of telling one's story."[9] *Maynard v. Meachum,* 545 F.2d 273, 279 (1st Cir. 1976). As in *Maynard v. Meachum, supra* at 279, "it may be proper to presume [from this record] that the defense counsel who represented the defendant for eight months [7½ months here] had discussed all relevant aspects of the case with him." A full *Hsu* inquiry was not necessary on these facts. The trial court had sufficient evidence before it to rule that appellant's pro se appearance would not compromise his Sixth Amendment rights.

*Affirmed.*

---

7. Appellant apparently concedes that the inquiry was "satisfactory," however minimally, with respect to voluntariness.

8. There is no allegation by appellant that his waiver was *not* voluntary, knowing or intelligent. The only assertion made is that there is nothing *in the record* showing that appellant or Ms. Kravetz believed that appellant's waiver was intelligent and voluntary.

9. Apparently for this reason, appellant left the more complex pretrial motion procedures to Attorney Kravetz.