**Jamar C. TILLMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12–CF–14.**

District of Columbia Court of Appeals.

Argued April 23, 2013.

Decided May 23, 2013.

10. As Bar Counsel observes in his brief, respondent has failed to file the affidavit required by D.C. Bar R. XI, § 14(g).

Kyle A. McGonigal, Washington, DC, for appellant.

Gilead Light, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman, John P. Mannarino, Michael Spence, and Lauren C. Bates, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and EASTERLY, Associate Judges, and FARRELL, Senior Judge.

FARRELL, Senior Judge:

■ "There can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of [the Supreme] Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." *Faretta v. California,* 422 U.S. 806, 832, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Recently, the Supreme Court again recognized the "tension in these two principles," *Marshall v. Rodgers,* —— U.S. ——, 133 S.Ct. 1446, 1449, 185 L.Ed.2d 540, 544 (2013), one strong enough that in an early post-*Faretta* decision more than once cited by this court, *United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131 (2d Cir.1975), the court observed "that a cause where a defendant is vehemently asserting his right of self-representation is not truly a case of waiver of a constitutional right; it is a decision to assert one constitutional right instead of another." *Id.* at 133–34.

■ Nevertheless, while mindful that "[a] criminal trial is not an obstacle course for the judge," *id.* at 134, this court in a series of post-*Faretta* decisions beginning with *Hsu v. United States,* 392 A.2d 972 (D.C.1978), has carefully enforced the procedure—"known in this jurisdiction as the '*Hsu*-inquiry,'" *Bell v. United States,* 950 A.2d 56, 69 (D.C.2008)—"for determining the validity of a defendant's waiver of the right to be represented by counsel." *McClinton v. United States,* 817 A.2d 844, 849 (D.C.2003). If the procedure is not followed, we "cannot uphold the finding of a valid waiver unless the inquiry of record

is buttressed by a compelling case of circumstantial evidence that the *pro se* defendant knew what he or she was doing." *Hsu*, 392 A.2d at 983; *see Bell*, 950 A.2d at 69; *McClinton*, 817 A.2d at 857; *Ali v. United States*, 581 A.2d 368, 372 (D.C. 1990).

The required *Hsu*-inquiry was not held in this case, because, as will appear, the trial judge found it sufficient that one had been performed in an unrelated case involving different charges several months earlier, after which appellant had been allowed to proceed *pro se*. That inquiry was not an adequate proxy for the one that, under our decisions, had to be conducted in this case. And, because the circumstances do not show compellingly that appellant nonetheless chose to represent himself informed of matters essential to a knowing and intelligent waiver—chiefly the elements of the charged crime (and possible defenses) and his potential sentencing exposure—we must reverse his conviction.

## I.

A jury found appellant (hereafter Tillman) guilty of escape from a halfway house. D.C.Code § 22–2601(a)(1) (2001); *Hines v. United States*, 890 A.2d 686, 688–89 (D.C.2006) (noting that a halfway house is a "penal institution" within the meaning of § 22–2601). He had been placed there pursuant to a work release order in the case of *United States v. Jamar Tillman*, No. CF2–23502–10 (D.C.Super. Ct. Dec 5, 2011), but he then left the institution and without signing out or permission. The escape charge was uncomplicated; as the judge instructed the jury, the government had to prove only that Tillman had been confined to the halfway house by court

order and that he knowingly or deliberately left the house or failed to return to it without permission or authorization. Still, the prosecution had to prove the charge beyond a reasonable doubt, and, as things turned out, it was aided in doing so by an admission Tillman made in court—during a pretrial colloquy with the judge after he had begun acting *pro se*—that no one had given him "permission [to leave] or nothing. I left because I wanted to leave. . . . Simple as that." [1]

In the unrelated *Tillman* case referenced above, a jury had originally hung on the combined charges of receiving stolen property (RSP) and unauthorized use of a motor vehicle (UUV). Represented by counsel at that trial, Tillman then asked to act *pro se* in future proceedings in the case, and the trial court (Judge Pan) engaged him in a full *Hsu*-inquiry before finding that he had waived his right to counsel. Tillman then pled guilty under a plea agreement in the case. Meanwhile, he had been indicted for escape and appeared before the court (Judge Epstein) for arraignment in September 2011 with appointed counsel, who told the court that "Mr. Tillman plans to represent himself in this case," though counsel would be there to assist him. When Tillman agreed that "I'm just about to represent myself," the judge explained that he had a constitutional right to do so, but advised him not to ("it's . . . almost always a big mistake to do so") because he had experienced counsel with him, who at the same time understood that "you're the one who has to make all the critical decisions in this case." When Tillman persisted in his request, the judge said "[y]ou can discuss it with [counsel]" and asked Tillman if he understood the limited purpose of arraignment. Tillman's

1. The government was allowed to read this admission to the jury as its last piece of evidence.

perplexed response prompted the judge to remark that "you don't know ... what's happening here. You don't know what you need to do to protect your rights." Rather than set a trial date, the judge scheduled a status hearing at which to decide the waiver issue, warning Tillman that "if you represent yourself, I'm going to treat you just like I would treat a lawyer."

The next month, Tillman's counsel opened the status hearing by reminding the judge that "this is a matter in which Mr. Tillman is representing himself." The judge corrected him by saying that Tillman had "indicated he wanted to represent himself, but I will talk about it when [he] comes out [of the holding cell]." As soon as Tillman appeared, the judge said:

I spoke to Judge Pan who presided over [the] trial ... where Mr. Tillman represented himself. I reviewed her order in that case, dated July 28th, where she explained that she conducted a *Faretta* inquiry and found that Mr. Tillman made a knowing, voluntary and intelligent waiver of his right to counsel.[2] And Mr. Tillman said he wanted to ... represent himself again in this case.

Based on Judge Pan's finding, I'm going to allow him to represent himself. He has the right to do so. I still think, Mr. Tillman, most people are better off— almost everybody's better off having a lawyer represent them. I'm going to ask [counsel] Mr. Powell to be present in the trial, you know, as standby Counsel and, you know, so you can consult with him. But I'll allow Mr. Tillman to rep-

resent ... himself at the trial that's scheduled for November 30th.

Two months later, Tillman went to trial *pro se* after asking the judge, unsuccessfully, to subpoena witnesses concerning issues the judge ruled would be irrelevant to the jury's task, *i.e.*, why Tillman had been confined in the halfway house and whether the government had reneged on earlier assurances to him that it would drop the escape charge.[3] There is no record evidence of discussions between Tillman and standby counsel during the two-month interval, and at the one-day trial, counsel participated largely by moving for a judgment of acquittal at the end of the government's case. (Tillman called no witnesses in his behalf.)

## II.

■ The *Hsu*-inquiry must be "a searching probe into whether a defendant's decision to waive the assistance of counsel is valid." *Bell*, 950 A.2d at 69. It has twin aspects. First, as *Faretta* itself explained, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Hsu*, 392 A.2d at 982 (internal quotation marks omitted) (quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525). Second, the inquiry must show that the defendant waived counsel

with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible

---

**2.** As explained earlier, Tillman actually had been represented by counsel at the earlier trial, but then proceeded *pro se* in connection with his guilty plea. In the July 28 order just cited, Judge Pan, in the course of denying a bond review motion Tillman had filed, referred to her earlier "*Faretta*-inquiry."

**3.** After trial, and though no motion to dismiss had been filed, the judge took up the latter issue *sua sponte* and found that the government had made no promise to dismiss the escape charge as part of Tillman's unrelated guilty plea or otherwise.

defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Id.* at 983 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (Black, J.) (plurality opinion)).

■ In this case, almost no *Hsu*-inquiry took place before the trial judge ruled that Tillman could represent himself. We say "almost" because, at the arraignment, the judge can be said to have warned Tillman of the dangers generally of self-representation by comparing his then-attorney's knowledge and experience with Tillman's own evident limitations ("You don't know what you need to do to protect your rights."), and by advising him to discuss the matter with counsel before permission would be given. That was the total inquiry, however, and the government does not contend that Judge Pan's questioning in the unrelated case[4] was an adequate substitute for the inquiry demanded in this case. If *Hsu*'s requirement of "a penetrating and comprehensive examination of all the circumstances," 392 A.2d at 983 (quoting Justice Black), means anything, it is that *Faretta*-waiver determinations are not fungible but must be specific to the case at hand and the offense to be tried.

Despite this failure, the government argues that it is clear from the circumstances that Tillman had sufficient knowledge of the role counsel would play in defending him against this charge to be able to forgo that assistance intelligently. It points to the *Hsu* court's own qualification that "[t]he courts have perceived [Justice Black's] list [in *Von Moltke*] as a catalog of concerns for trial court consideration, not as a prescribed litany of questions and answers leading to mandatory

reversal in the event that one or more is omitted." *Hsu,* 392 A.2d at 983. And it cites *Abney v. United States,* 464 A.2d 106 (D.C.1983), and *Fowler v. United States,* 411 A.2d 618 (D.C.1980), as putative cases where "[o]n less compelling facts" (Br. for Appellee at 15), the court upheld a finding of valid waiver from the circumstances.

*Hsu* acknowledged that waiver can be properly found if "the inquiry of record is buttressed by a compelling case of circumstantial evidence that the *pro se* defendant knew what he or she was doing." 392 A.2d at 983. But the government's argument is undermined by the twin facts that almost no "inquiry of record" appears in this case, and that the knowledge fairly imputable to Tillman about counsel's role (and thus the assistance he was forgoing) was generic in nature—unrelated to the specific challenge of opposing an escape charge, and even to knowing whether he should contest it in light of the possible sentencing exposure. Tillman undoubtedly knew how a defense counsel operates generally at trial: he had watched his attorney perform at the UUV and RSP trial leading to a hung jury, and the subsequent *Hsu*-inquiry in that case reinforced his general knowledge. But our decisions require more than this, namely, a specific awareness of the present charge, possible defenses or mitigating factors, and the potential sentence upon conviction.

Tillman's case thus resembles the defect in *McClinton, supra,* where we found no valid waiver partly because "[n]othing during the colloquy regarding [the defendant's] desire to represent himself showed that [he] mentally grasped or understood [the] offenses [charged], the defenses he could rely on, or the range of punishments

---

4. Although the judge relied at the time on Judge Pan's July 28 order and his phone conversation with her, the transcript of the *Hsu*-inquiry in the other case is before us and reveals exemplary compliance with the *Hsu/Faretta* waiver requirements.

to which he was exposed." 817 A.2d at 856; *see also Hsu*, 392 A.2d at 984 n. 12 (where the trial court failed to discuss "considerations of the substantive variety" with the defendant, "*[e].g.*, the nature of [the charged crime], the included offenses, the range of punishments, possible defenses, and mitigating circumstances"). The omission of an inquiry could be overlooked if this were the unusual case exemplified by *Abney, supra,* where the defendant's "familiarity with the courts in precisely this kind of legal proceeding" could be inferred from his frequent arrests and court appearances on the same charge (unlawful entry on the U.S. Capitol Grounds), such that he "was certainly aware of the nature of the charges he faced and possible punishments therefor." 464 A.2d at 109; *see also Fowler,* 411 A.2d at 623 (defendant's knowledge of the "seriousness of the charges" could be inferred from his pretrial letter to the trial judge "referring to 'the strong penalties, the severity of the offense' ").[5] But no such inference is reasonable here.

We stated in *Hsu,* that "[a] valid waiver, if there was one, was made prior to trial or not at all." 392 A.2d at 986.[6] The government takes this statement literally by

pointing out that, after the trial judge let Tillman proceed *pro se* but before the jury was *sworn,* a back-and-forth colloquy between judge and defendant alerted Tillman specifically to the proof requirements for escape ("The government just has to prove that the judge put you in a halfway house and you left."). Yet, aside from what little—indeed, nothing—this told Tillman about his sentence exposure (or possible defenses), to rely on what the judge said *after* he had ruled effectively shifts the fault to Tillman (who, the government says, "never indicated that he no longer wished to proceed *pro se* ")[7] for the erroneous waiver determination. And, although we can only guess, a proper *Hsu*-inquiry and resultant change of mind could have eliminated the occasion for Tillman to volunteer his guilt ("I left because I wanted to leave ... Simple as that") in the same uncounseled exchange with the judge that the government relies on.[8]

The government is right that this was not a complex prosecution for multiple charges, as in *McClinton,* or even for a single complicated charge; and Tillman was not the defendant in *McClinton* who had "no experience with the adult criminal

5. In *Fowler,* moreover, which involved a trial court ruling "without the benefit of our opinion in *Hsu,*" 411 A.2d at 623, this court found it "proper to presume" from defense counsel's lengthy representation of the defendant before the waiver that counsel "had discussed all relevant aspects of the case" with the defendant. *Id.* at 624. In this case, the record evidence says almost nothing about interactions between Tillman and standby counsel meant to inform Tillman of the challenges he faced.

6. We said this in rejecting the argument that a waiver could be found partly from "the defendant['s having] used relatively good judgment in representing himself at [the actual] trial." 392 A.2d at 986.

7. Br. for Appellee at 12 n. 4.

8. The government further relies on a brief colloquy between Tillman and Chief Judge Satterfield at the preliminary hearing when the issue of self-representation first arose. The judge told Tillman (who apparently believed he could not lawfully be placed in a halfway house until sentenced) that "[t]here just has to be a Court order that requires you to be there. And if you walk away from there then there's the evidence of your violating the Court order." But from this lone statement we cannot infer Tillman's "awareness of the weighty consequences attending his waiver," *Fowler,* 411 A.2d at 623, including "the range of allowable punishment, possible defenses ... and circumstances in mitigation...." *Id.* (quoting *Von Moltke,* 332 U.S. at 724, 68 S.Ct. 316).

justice system," 817 A.2d at 856, or even the accused in *Hsu* whose "previous *pro se* experience ... was in relatively less serious cases of a sort unrelated to ... felony prosecution." 392 A.2d at 985. All the same, Tillman was entitled to a waiver inquiry "[ ]related to the present felony prosecution," *id.*, which he did not receive. And because this is not "a compelling case of circumstantial evidence" of valid waiver, *id.* at 983, we must reverse the conviction.[9]

*So ordered.*

---

9. The government does not claim that the error here was harmless under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). That, no doubt, is because under *McClinton, supra,* harmless error analysis does not come into play if the denial of counsel "due to the absence of a [valid] waiver ... pervade[d] the entire criminal proceeding," 817 A.2d at 859, *i.e.*, amounted to "structural error." *Id.* at 858. In *McClinton,* the defendant "was represented by counsel ... for most of his trial, that is, throughout the government's case-in-chief and during part of the defense case," *id.* at 859, unlike Tillman, who beginning with jury selection and throughout his trial and sentencing represented himself, with a standby counsel whose participation was minimal. *Cf. id.* ("[s]tand-by counsel took an active, meaningful role in key aspects of the trial following ... McClinton's [belated] decision to represent himself").

Given our decision to reverse, we need not strictly reach Tillman's other, unrelated assignments of error, which are insubstantial in any case. First, the judge correctly instructed the jury on the elements of escape; he did not "direct a verdict" (Br. for App. at 16) by replacing the phrase "penal institution" in the standard instruction with "halfway house." *See Hines v. United States, supra.* Second, the judge did not err in admitting into evidence, as a public or official record, *see In re D.M.C.*, 503 A.2d 1280, 1283 (D.C.1986), the Pretrial/Presentence Work Release Order that had resulted in Tillman being placed in the halfway house.